UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**KEMCO FOOD DISTRIBUTORS, INC.,**

    **Plaintiff,**

    **v.**

**R.L. SCHREIBER, INC.,**

    **Defendant.**

**CIVIL NO. 15-1955 (PAD)**

**OPINION AND ORDER**

Delgado Hernández, District Judge.

Kemco Food Distributors, Inc., initiated this action against R.L. Schreiber, Inc. under the Puerto Rico Dealers Act, P.R. Laws Ann. tit. 10 §§ 278, et seq. ("Law 75") (Docket No. 1). Before the court is "Defendant's Motion for Summary Judgment" (Docket No. 13), which Kemco opposed (Docket No. 27). Schreiber replied (Docket No. 31), and Kemco sur-replied (Docket No. 32). For the reasons below, Schreiber' motion for summary judgment is GRANTED and the case DISMISSED.

**I.     BACKGROUND**

On June 28, 2012, Kemco and Schreiber executed a distribution agreement, pursuant to which Kemco was designated as Schreiber's exclusive distributor in Puerto Rico (Docket No. 1 at ¶ 7). On June 10, 2015, Schreiber notified Kemco of its decision to terminate the agreement. Id. at ¶¶ 11-12. On June 15 and 19, 2015, Kemco sent separate communications to Schreiber, requesting that Schreiber refrain from terminating the relationship, and continue to fulfill Kempo's orders. Schreiber refused, and this action ensued. Id. at ¶¶ 16-18.

On July 17, 2015, Kemco filed the complaint. Id. On August 17, 2015, it presented a motion for preliminary injunction (Docket No. 7). The same day, the court ordered Schreiber to respond not later than September 10, 2015 (Docket No. 8). Kemco moved for reconsideration (Docket No. 9), which was denied (Docket No. 10).[1]

On September 10, 2015, Schreiber opposed the injunctive relief request, and moved for summary judgment (Docket Nos. 12 and 13, respectively). On October 9, 2015, Kemco replied to Schreiber's opposition to the preliminary injunction request (Docket No. 22). On October 19, 2015, it reiterated its request for a preliminary injunction (Docket No. 25), which was denied on that same date (Docket No. 26). Finally, on October 26, 2015, it opposed Schreiber's motion for summary judgment (Docket No. 27). On December 4, 2015, the court held a status conference, during which the parties presented extensive arguments in support and in opposition to pending motions (Docket No. 34). Based on the arguments presented, the court decided to maintain the status quo.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and

---

[1] Article 3A of Law 75 allows courts to grant "any provisional remedy or measure of an interdictory nature to do or desist from doing, ordering any of the parties or both, to continue in all its terms, the relation established by the dealer's contract, and/or abstain from performing any actor any omission in prejudice thereof." P.R. Laws Ann. tit. 10 § 278b-1. Additionally, it instructs courts evaluating provisional remedies to consider public policy and the interests of all parties concerned. Id. The basic public policy underlying the statute is to prevent dealer termination without just cause. Luis Rosario, Inc. v. Amana Refrigeration, Inc., 733 F.2d 172, 173 (1st Cir. 1984). The strength of the parties' interests may depend upon the likelihood that just cause will be found. Id. Therefore, the court opted to evaluate Kemco's request for preliminary injunction with the benefit of Schreiber's response (Docket No. 10).

assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. U.S., 707 F.3d. 130, 135 (1st Cir. 2013).

To resist summary judgment, the nonmovant must do more than show some metaphysical doubt as to a material fact. Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows. Based on those facts, Schreiber is entitled to judgment as a matter of law.

### III.    FINDINGS OF FACT

Schreiber is a family-owned and operated food manufacturing company that was established in 1968 in South Florida. See, Schreiber's Statement of Uncontested Material Facts ("SUMF"), Docket No. 15 at ¶ 1. It supplies food bases, spices, seasoning blends, and related products to the food service industry. SUMF at ¶ 2. On June 28, 2012, it designated Kemco as its exclusive distributor in Puerto Rico. SUMF at ¶ 3. The corresponding agreement was contingent upon Kemco's being current on its payments to Schreiber. SUMF at ¶ 4.

All orders were to be shipped "Net 30." SUMF at ¶ 5. "Net 30" meant that Kemco was required to pay for the products not later than thirty calendar days after the date on which the products were shipped. SUMF at ¶ 6. The invoices that Schreiber sent to Kemco performed the "Net 30" calculation, identifying the specific date on which each payment was due. SUMF at ¶ 7. Nevertheless, Kemco provided untimely payments for every invoice that was issued from January 1, 2014 through the termination of the relationship – a total of thirty-five (35), some of which included delays of one hundred and twenty (120) days. SUMF at ¶ 8.

On account of those late payments, Schreiber sent statements to Kemco, via e-mail, identifying outstanding invoices and amounts pending to be paid, and requesting payment. SUMF at ¶ 9. Additionally, Schreiber's representatives placed telephone calls to Kemco requesting payment. SUMF at ¶ 10. Further, Schreiber blocked Kemco's account at least five (5) times, and placed Kemco's account on hold at least twice. New orders would not be shipped until Kemco reduced its outstanding debt. SUMF at ¶ 11.

On June 10, 2015, Schreiber terminated its relationship with Kemco by way of a letter directed to William Pérez and Arturo Mato. SUMF at ¶ 12. It expressed that the relationship was terminated because, among other things, Kemco's appointment was expressly contingent upon its

remaining in good standing with respect to its payment obligations, and Kemco had failed to do so. SUMF at ¶ 13. At the time the relationship was terminated, Kemco's account was delinquent and on hold due to the lack of payment. SUMF at ¶ 14.

## IV.   DISCUSSION

### A. Just Cause under Law 75

Law 75 governs the business relationship between principals and the locally appointed distributors who market their products. Caribe Indus. Systems, Inc. v. National Starch and Chemical Co., 212 F.3d 26, 29 (1st Cir. 2000). It was enacted to remedy the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service. Triangle Trading Co, Inc. v. Robroy Industries, Inc., 200 F.3d 1, 2 (1st Cir. 1999).

To accomplish this goal, Law 75 limits the principal's ability to end the relationship unilaterally except for just cause, while subjecting it to considerable economic liability for unjustifiable terminations. Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 317 (1st Cir. 1999). The protection has been extended to include conduct of a principal which, short of ending the distribution relationship, nonetheless impairs it. Id. at 317-318. In those instances, impairments without just cause would subject the infringing party to the same liability provided for terminations. Id.

Schreiber claims termination was justified because of Kemco's repeated failure to remain in good standing with its payment obligations (Docket No. 13 at pp. 5-6). Law 75 defines "just cause" to include a dealer's failure to perform any of the essential conditions of the agreement as well as any action or omission that adversely and substantially affects the interests of the marketing or distribution of the merchandise or service. See, P.R. Laws Ann. tit. 10 § 278(d). Normally,

paying for goods on time is one of the essential obligations of the dealer's contract, the non-fulfillment of which has been recognized as just cause for termination under Law 75. Waterproofing Systems, Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 30 (1st Cir.2006); PPM Chemical Corp. of P.R. v. Saskatoon Chemical Ltd., 931 F.2d 138, 139 (1st Cir. 1991). By exception, it is not so recognized in the abnormal circumstance in which a supplier does not care about late payments. Waterproofing Systems, Inc., 440 F.3d at 29 (citing Biomedical Instrument v. Cordis, 797 F.2d 16, 18 (1st Cir. 1986), and PPM Chemical Corp. of P.R., 931 F.2d at 139-140)); Greenville Funeral Supply, LLC v. Rockvale, Inc., 597 F.Supp.2d 241, 245 (D.P.R. 2008).

Kemco alleges that late payments cannot be deemed an essential condition of the agreement here (Docket No. 27 at p. 6). But the contract expressly states that "Kemco Food, Inc. is designated as the exclusive distributor for [Schreiber's] products in Puerto Rico provided that it remains in good standing with its accounts receivable and shows continued commitment to the growth of sales for the R.L. Schreiber, Inc. product line" (Docket No. 1, Exh. 1). In the same way, Schreiber contacted Kemco via email and telephone, identifying any and all outstanding invoices and requesting payment. And when that did not work, Kemco's account was blocked (at least five times), and put on hold (at least two times). By extension, timely payments were a matter of serious concern in this distribution relationship.

Kemco argues that Schreiber failed to raise this issue during the time the two companies did business together. The record, however, shows otherwise. Besides, Law 75 does not impose upon suppliers the obligation to immediately terminate the infringing dealer, to issue an ultimatum, or to permit the dealer to exhaust cure periods not set forth in a contract before validly terminating the relationship when the dealer has breached an essential condition of the distribution agreement. See, Casco Sales Co., Inc. v. Maruyama U.S., Inc., 901 F.Supp.2d 311, 323 (D.P.R. 2012)(rejecting

claim that principal had no just cause to terminate distribution agreement as it had never threatened dealer with termination for late payments; similarly, agreement required no such prior threats, and no legal authority was put forward for the proposition that in order to validly terminate a distribution agreement under Law 75, a supplier must threaten dealer with termination); Tatan Management v. Jacfran Corp., 270 F.Supp.2d 197, 201-02 (D.P.R. 2003)(pointing out that even though defendants tolerated due balances and attempted to address the issue through payment plans, that did not imply a tacit alteration of the terms of payment or an endorsement of untimely payments); Dyno Nobel, Inc. v. Amotech Corp., 63 F.Supp.2d 140, 150-151 (D.P.R. 1999)(finding good cause to terminate when despite repeated efforts by the principal to set reasonable payment schedules, dealer continued to make untimely payments).  In the end, Kemco failed to comply with an essential condition of its agreement with Schreiber.

   B.  Fed.R.Civ.P. 56(d)

Kemco asks the court to deny without prejudice, or in the alternative hold in abeyance, Schreiber's motion for summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure (Docket No. 27).[2]  It asserts that Schreiber's purported reason for terminating the relationship was a pretext, the real reason being Kemco's failure to implement a sales model proposed by Schreiber. Id. at pp. 2-3.

Pursuant to Fed.R.Civ.P. 56(d), if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it, (2) allow time to obtain affidavits or declarations or to take

---

[2] Rule 56(d) was formerly Rule 56(f). The textual differences between current Rule 56(d) and former Rule 56(f) are purely stylistic. Therefore, case law developed under former Rule 56(f) remains controlling. Nieves-Romero v. United States, 715 F.3d 375, 381 n.3 (1st Cir. 2013).

discovery, or (3) issue any other appropriate order. The rule serves a valuable purpose, protecting a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion. Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 28 (1st Cir. 2013).

The grant or denial of a Rule 56(f) continuance rests in the trial court's sound discretion. Sheinkopf v. Stone, 927 F.2d 1259, 1263 (1st Cir. 1991). The court must bear in mind that discovery is not always a prerequisite to the proper disposition of a motion for summary judgment. Carder v. Continental Airlines, Inc., 595 Fed.Appx. 293, 299 (5th Cir. 2014). If it appears that further discovery will not provide evidence creating a genuine dispute of material fact, summary judgment may be granted. Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010).

With that in mind, Kemco states that (1) Schreiber's representative/ liaison for Puerto Rico came to Puerto Rico to meet with Kemco's management and to participate in a BBQ competition and trade show; (2) during the visit, the representative/liaison approached Kemco to inquire as to the possibility of Kempo's employing a fleet of vehicles in order to sell Scheriber's products "door to door" at restaurants and hotels, as those products are being distributed in other markets throughout the United States; and (3) after some discussion, Kemco declined to consider selling Schreiber's products in that manner (Docket No. 22, Exh. 1 at ¶¶ 4-8).

On that basis, Kempo seeks discovery as to: (1) how Schreiber treats other distributors throughout the United States and internationally with regards to payment histories; (2) how Schreiber changed its sale model in the United States, and if there was a timeline for the implementation of a new sales model in Puerto Rico; (3) what are Schreiber's new sales projections for its Puerto Rico market in order to gauge the extent of the economic incentive behind Kemco's

termination; and (4) any other topic relevant to this litigation, to include information pertaining to the decision making process behind the termination of Kemco (Docket No. 27 at pp. 6-7).

Kemco's proffer does not support what it seeks. In Biomedical, the First Circuit held that the dealer had raised a triable issue of fact as to whether overdue balances had been used as a subterfuge for termination, finding that overdue balances were neither essential to the parties' relationship nor a matter of serious concern for them. See, 797 F.3d at 18. By analogy, in Waterproofing Systems, Inc., 440 F.3d at 30, the First Circuit found late payments pretextual as the dealer had received from the principal a letter congratulating it on an "extraordinary job." In contrast, Kemco could not undermine the importance of timely payments in its relationship with Schreiber.

The contract expressly conditioned Kemco's status as dealer upon being current in payments. Kemco consistently failed to make those payments. Schreiber expressed concern for them. As previously stated, it identified outstanding invoices; contacted Kemco via email and telephone requesting payment; blocked Kemco's account (at least five times); and put Kemco's account on hold (at least two times). Confronted with such evidence, Kemco presented two declarations under penalty of perjury – Docket No 22, Exhs. 1 and 2 – that could not cast doubt on the existence and terms of the contract; Kemco's payment history; or the measures that Schreiber undertook to follow up on and collect amounts due. How Schreiber does business in other markets or how it has opted to do business in Puerto Rico after terminating the relationship it had with Kemco do not change those facts.

What is more, the Court in Casco rejected a pretext allegation for lack of evidence that late payments were not of serious concern to the supplier, as (1) the contract set timely payments as an essential obligation; and (2) the supplier expressed concern for payments due. See, 901 F.Supp.2d

Kemco Food Distributors, Inc. v. R.L. Schreiber, Inc.
Civil No. 15-1955 (PAD)
Opinion and Order
Page 10

at 318-322. Such is the case here. For the same reason, Kemco cannot prevail as a matter of law. See, PPM Chemical Corp. of P.R., 931 F.2d at 140 (summary judgment dismissing Law 75 claim in absence of evidence that principal did not care about late payments); Greenville Funeral Supply, 597 F.Supp.2d at 242, 248 (same).

## V. CONCLUSION

For the reasons stated, "Defendant's Motion for Summary Judgment" (Docket No. 13) is GRANTED. Correspondingly, Kemco's "Motion and Memorandum of Law Requesting Provisional Remedy under the Puerto Rico Dealers Act" (Docket No. 7) is DENIED AS MOOT. Judgment will be entered accordingly.

In San Juan, Puerto Rico, this 29th day of February, 2016.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge